



**SO ORDERED.**

**SIGNED this 30th day of June, 2017.**

*Catharine R Aron*
_____
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Susan Rene Craddock Washabaugh, | ) | Case No. 14-50106 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| William P. Miller | ) | |
| United States Bankruptcy Administrator, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-06031 |
| | ) | |
| Susan Rene Craddock Washabaugh, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

**MEMORANDUM OPINION**

The Court heard arguments in this matter on May 3, 2017, in Winston-Salem, North
Carolina.  The Defendant, Susan Washabaugh, moved for summary judgment or partial
judgment as to the Bankruptcy Administrator's Complaint, which seeks revocation of the
Defendant's Chapter 7 discharge pursuant to 11 U.S.C. § 727(d)(1) (the "Complaint").  The
Defendant filed a Motion for Summary Judgment [Doc. # 42] and Brief in Support of Motion for

1

Summary Judgment on June 1, 2016 [Doc. # 43] ("Defendant's Motion").  The Plaintiff, the

Bankruptcy Administrator (the "BA"), filed a Response [Doc. # 60] and Brief in Opposition to

the Defendant's Motion for Summary Judgment on July 1, 2016 [Doc. # 61] (the "BA's

Response"), and the Defendant filed a Reply in Support of the Summary Judgment Motion on

July 13, 2016 [Doc. # 61] (the "Defendant's Reply").  After this Court denied the parties' Motion

to Approve Settlement Agreement by Order entered on April 27, 2017, the Defendant's Motion

was scheduled for hearing (the "Hearing").

At the Hearing, Robert E. Price, Jr., appeared on behalf of the BA, and John F. Bloss

appeared on behalf of the Defendant.  Having reviewed the file and considered the arguments of

counsel, the Court will deny the Defendant's Motion for the reasons that follow.

## JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§

151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle

District of North Carolina. This is a core proceeding within 28 U.S.C. § 157(b)(2)(J).

## BACKGROUND

The following are the undisputed facts concerning summary judgment as set out in the

parties' filings and oral arguments.  Prior to filing bankruptcy, the Defendant had been employed

by Wake Forest Baptist Health/N.C. Baptist Hospital (the "Hospital") as the Director of

Volunteer Services. [Defendant's Motion, at p.2; BA's Response, at p.2; Doc. # 43-1, at p.2 (the

"Washabaugh Affidavit")].  Over a period of at least two years, the Defendant made personal

purchases for either herself or her daughter using the Hospital's credit card or vendor account

and did not reimburse the Hospital.  [Defendant's Motion, at p.4-5; BA's Response, at p.3;

Defendant's Affidavit, at p.3].  In addition to her work for the Hospital, the Defendant also

2

worked as a commissioned salesperson for Thirty-One Company, which sold handbags and other

items.  [Defendant's Motion, at p.3; BA's Response, at p.3; Defendant's Affidavit, at

p.3].  During her employment with the Hospital, the Defendant made purchases from Thirty-One

using the Hospital's credit card for gifts to various volunteers, employees, and other entities; she

received a commission for approximately $130,000 worth of items sold.  [Defendant's Motion, at

5-6; BA's Response, at p.2-3].  During an internal audit in 2013, Hospital personnel, including

Yates Lackey, the Director of Internal Audit, interviewed the Defendant concerning numerous

personal purchases made with the Hospital's credit card or through the Hospital's vendor

account.  [Affidavit of Yates Lackey, Doc. # 61-2 ("Lackey Affidavit"); Washabaugh Affidavit,

at 3].  As a result of the initial interview and additional meetings, the Defendant turned over, and

the auditors found, numerous items in her home and office which she claimed were for

volunteers, including a computer, as well as items from Tiffany & Co. and Pandora.  [Lackey

Affidavit].  The Defendant's employment with the Hospital ended in March of 2013 as a result

of these personal purchases.  [Defendant's Motion, at 2; BA's Response, at p.2].

Upon discovery of the Defendant's fraudulent activities in 2013, the Hospital filed an

employee dishonesty claim with its insurance company, National Union Fire Insurance Company

of Pittsburgh, PA, ("National Union").  [Defendant's Motion, at p.5].  National Union retained

RGL Forensics ("RGL") to investigate the manner and extent of the alleged fraud.  Id.  RGL

concluded, after interviewing employees and analyzing financial statements, that the Hospital's

losses due to the Defendant's employee dishonesty totaled $1,009,347.  Id. at 6.  RGL

summarized its findings in a report to the Hospital (the "Report") [Defendant's Motion, Exhibit

5].[1]

---

[1] In determining a motion for summary judgment, the Court may consider any evidence in the record or submitted by the parties if it would be possible to introduce the evidence at trial.  See Fed. R. Civ. P. 56(c)(2) ("A party may

3

object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible into evidence."); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence need not, at the summary judgment stage, be in a form required for admissibility at trial, but the "substance or content of the evidence . . . [must] be admissible . . . ." 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.91[2] (3d ed. 2015). Affidavits or declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Pursuant to Fed. R. Civ. P. 56(c)(2), a party may object that material cited cannot be presented in a form that would be admissible in evidence at trial. If a party fails to object to the inadmissibility of evidence offered in support of a motion for summary judgment, the Court may deem any objection to admissibility waived and consider the evidence. See Fed. R. Evid. 103(a); see also Local Rule 7056-1(c) ("All facts set forth in the statement of the movant shall be deemed admitted for the purpose of the motion for summary judgment unless specifically controverted by the opposing party.").

In the Defendant's Motion, the Defendant objects to the RGL Report as containing "speculative, unsworn assertions" that are "not appropriate material to create a disputed issue of fact for summary judgment purposes." [Defendant's Motion, at 5, fn. 2]. In order to resolve the Defendant's objection and determine whether the RGL Report is admissible for the purposes of summary judgment, the Court must determine whether the substance or content of the evidence could be put into a form which would be admissible at trial. See Catrett v. Johns-Manville Sales Corp., 826 F.2d 33, 41 (D.C. Cir. 1987) (Celotex on remand); 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.91[2] (3d ed. 2015).

Linda Hogarth, Senior Manager at RGL Forensics, wrote the RGL Report and submitted it to Judith Blake, Complex Claims Director for AIG Property Casualty, and Carolyn Barnette, Insurance & Risk Manager at Wake Forest University Baptist Medical Center. [See Linda Hogarth Certification, Doc. # 63-1]. It is a final report purporting to evaluate the manner and extent of Susan Washabaugh's alleged employee dishonesty for which the Hospital submitted a claim to its insurer, National Union. [Defendant's Motion, at p.5]. The RGL Report contains, in part, a detailed statement of the allegations that Susan Washabaugh used the company credit card for unauthorized purchases, an estimated amount of loss as a result of these purchases as calculated by the Hospital, a brief overview of the manner and method by which the credit card purchases were detected, and the method by which RGL determined Ms. Washabaugh concealed her personal purchases using the credit card.

Some of the RGL Report cites directly to the individuals from whom the information was gathered. Other portions of the document summarize findings determined by assessing the Hospital's business records. Other portions of the Report do not cite to any source or person when describing past occurrences or findings.

In the Plaintiff's answers to the Defendant's Interrogatories, submitted into evidence by the Defendant [Doc. # 43-9] ("Plaintiff's Interrogatory Response"), the Plaintiff lists the following people, listed as witnesses for trial, as having knowledge of the issues in this action: Judith Blake, Carolyn Barnette, Linda Hogarth, and Yates Lackey. Carolyn Barnette's affidavit, filed with the BA's Response brief, states that she had personal knowledge of the matters investigated by the RGL Forensics Report, that she has reviewed the final report, and that the investigation is accurate to the best of her knowledge [Affidavit of Carolyn Barnette, Doc. # 61-1 (the "Barnette Affidavit")]. Also submitted with the BA's Response brief, Yates Lackey's Affidavit states that he has personal knowledge of the Hospital's internal audits performed on this matter, which served the basis of the RGL Forensics Report. [Lackey Affidavit, Doc. # 61-2]. These individuals either helped to create the RGL Report or were named in the RGL Report and can provide testimony at trial which would be admissible. See Catrett v. Johns-Manville Sales Corp., 826 F.2d 33, 38 (D.C. Cir. 1987) ("The second item also relates to Mr. Hoff. In her supplemental interrogatory responses, Mrs. Catrett listed Hoff as a witness. There can, of course, be no doubt that this response is properly considered in ruling on a summary judgment motion."). Regardless of whether these individuals and declarants are available and competent for trial, the Plaintiff argues the documents examined in the RGL Report, including visa credit card statements, worksheets accompanying credit card statements, and vendor invoices, may all be admissible as exemptions to the hearsay rule under Rules 803(6) and 902(11) of the Fed. R. Evid. as records of a regularly conducted activity.

Where the RGL Report is based on the personal knowledge of an individual or that individual's analysis of the Hospital's business records, and that individual submitted an affidavit, those contents may be rendered admissible at trial. Therefore, to the extent the RGL Report is necessary support for the Plaintiff's argument that there are genuine disputes of material fact in opposition to the Motion for Summary Judgment, the Court will consider those portions of the Report.

The parties dispute the existence and purpose of many of the Defendant's purchases.  The parties also dispute to whom the Defendant gave the property once it was purchased, but the parties do not dispute that certain items were shipped directly to the Defendant's daughter or kept by the Defendant.  [Defendant's Motion, at p.4-5].  Specifically, the parties do not dispute that the Defendant used the Hospital's credit card to purchase the following property for which she failed to reimburse her employer and intended for personal use: a Pottery Barn teen rug; an Apple IPhone gift card; an IKEA bookcase; a Pottery Barn teen lamp, shade and mirror; an Apple Store gift card; Dallas Cowboy boots; two ladies' dresses from Nordstrom; and a personalized t-shirt.  [Defendant's Motion, at 5; Defendant's Affidavit, at ¶ 9].  In light of these eight purchases, the Defendant was charged in November, 2013, with obtaining property by false pretenses under North Carolina law.  [Defendant's Motion, at p.5, Complaint, Exhibit A & B].  A hearing in the District Court of Forsyth County was scheduled for December 19, 2013. [Complaint, Exhibit A].

About two months after these charges were brought, and almost a year after she stopped working at the Hospital, the Defendant filed a Chapter 7 petition with this Court on January 31, 2014.  [Case # 14-50106, Doc. 1; AP Case # 15-06031, Defendant's Motion, at p.1; BA's Response, at p.3].  The Defendant listed the Hospital as an unsecured, nonpriority creditor in Schedule F of her petition. The description accompanying the claim states the Defendant incurred the debt in 2013, for "medical/dental" services in the amount of $35.00.  [Case # 14-50106, Doc. # 1, p. 20].  In her Statement of Financial Affairs, the Defendant listed income for the two years preceding her filing as follows:

| AMOUNT | SOURCE |
|--------|--------|
| $1,730 | YTD employment income |
| $45,000 | 2013 (est) |
| $81,000 | 2012 |

In Schedule B, the Defendant listed personal property in the amount of $4,320.00, including clothing and personal effects in the amount of $500.00, jewelry in the amount of $500.00, and electronics in the amount of $225.00. The Defendant scheduled $98,495.00 of unsecured, non-priority debt. The case was deemed a "no asset" Chapter 7. The Hospital did not file a proof of claim.

The deadline to object to the Defendant's discharge was May 6, 2014. The Defendant received a discharge on May 15, 2014. The case was closed on May 21, 2014.

On May 22, 2014, six days after the Court entered an order granting the Defendant's discharge, sixteen days after the deadline for objecting to the Defendant's discharge, and the day after the bankruptcy case had closed, the Defendant pled guilty to obtaining property by false pretenses. [Defendant's Motion, at 2; BA's Response, at 2; Complaint, Exhibit B]. The court ordered her to pay, and she did pay, $3,153.86 in restitution for the eight items of property obtained by false pretenses. [Defendant's Motion, at p.5; Doc. # 43-2; BA's Response, at p.2].

A little less than one year after the Defendant pled guilty to obtaining property by false pretenses, National Union filed a motion to reopen the bankruptcy case to file an adversary proceeding to determine the dischargeability of any debt arising from the alleged employee dishonesty conduct. [Case # 14-50106, Doc. # 19]. The Court reopened the Defendant's case on May 15, 2015, but National Union did not file an adversary proceeding.

The BA filed the Complaint on the day the underlying bankruptcy case was reopened, seeking revocation of the Defendant's Discharge under 11 U.S.C. § 727(d), alleging the

Defendant concealed assets and transfers and omitted material information in her petition and schedules concerning the employee dishonesty claim and the criminal charges.

The Complaint sets out the following facts: that the Defendant used her company credit card for personal purchases and gifts for her daughter and others; that she concealed these personal purchases by submitting false credit card summary statements to the Hospital, indicating these purchases were for business purposes; that she also made unauthorized personal purchases from multiple vendors through the Hospital's vendor account; that she removed inventory from the Hospital gift shop without authorization; that the Hospital terminated her employment due to these personal purchases after an internal audit; that she was charged with eight counts of obtaining property belonging to the Hospital by false pretenses; that she entered a guilty plea to these charges in May of 2014; that she did not disclose the existence of criminal charges in her petition or schedules, nor did she disclose any gift or transfers purchased in her petition and schedules; that the Hospital and National Union investigated the extent of her fraud and developed the RGL Report; that a summary of the RGL Report shows the Defendant acquired over $1,000,000 in personal purchases since 2008; that the RGL Report concluded the Defendant had given her daughter or others many items purchased and taken from the gift shop; and that the Defendant testified under oath that her petition and schedules were complete.

In the Claim for Relief, the BA sets out the following theories in support of a claim to revoke the Defendant's discharge pursuant to § 727(d)(1):

1) The Defendant obtained her discharge by fraud, through the commission and concealment of the events set out in the Complaint and their omission from her bankruptcy filings.

2) The Plaintiff did not discover the alleged fraud until May, 2015.

3) The Defendant knowingly and fraudulently, in connection with the case, made a false oath

or account in violation of § 727(a)(4). The Defendant's false oaths concerned material facts.

4) Given the discovery of the acquisition of over $1,000,000 in personal property by the Defendant in the five years prior to filing, the Defendant has failed to explain the loss or deficiency of assets to meet the Defendant's liabilities in violation of § 727(a)(5).

The Defendant disputes the accuracy of the extent of the fraud as recounted by RGL; that she omitted any property from her petition obtained through fraud on her employer or transferred to a third party; and that she had the intent to knowingly or fraudulently omit any one of these matters, potential debts, and/or purchased items from her petition schedules.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure, applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment may be appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing there remains no genuine dispute of material fact by either citing to particular parts of materials in the record, Fed. R. Civ. P. 56(c)(1)(A), or by showing that an adverse party has not or cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute of fact is genuine when the facts presented are supported by evidence that would allow a reasonable person to find for the non-movant. Anderson v. Liberty Lobby, 477 U.S. at 248, 106 S. Ct. 2510; see In re Joyce, 2009 WL 1606424, at * 2 (Bankr. M.D.N.C. 2009) (Trustee's complaint did not claim, nor was there any evidence put forth, that the Trustee did not know of the alleged fraud prior to discharge. As a lack of knowledge was one element of the claim, summary judgment was appropriate because no reasonable person could find the trustee had not

8

known in the applicable period); <u>see also</u> James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶ 56.22 (3d ed. 2015).

The court must abstain from weighing evidence and instead presume the credibility of the non-movant's evidence. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255; <u>In re French</u>, 499 F.3d 345, 354 (4th Cir. 2007) (in awarding summary judgment, the bankruptcy court made credibility determinations on both parties' affidavits, rejected their testimony as unreliable, and was not empowered to make those determinations).

### <u>Revocation of Discharge under Section 727(d)</u>

The Court "shall grant the debtor a discharge" unless one or more of the stated reasons under § 727(a) is proven. A Court shall revoke the debtor's discharge if the Court finds that "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). The objecting party bears the burden of establishing that a discharge should be revoked pursuant to § 727(d) by a preponderance of the evidence. Fed. R. Bankr. P. 4005; <u>see</u> <u>Farouki v. Emirates Bank Inter., Ltd.</u>, 14 F.3d 244, 249 (4th Cir. 1994); <u>In re Fisher</u>, No. 02-52442, 2008 WL 90188, at *2 (Bankr. M.D.N.C. Jan. 7, 2008).

A discharge may only be denied on the grounds set forth in the Code, which is to be strictly construed against the movant and liberally for the debtor. <u>See</u> <u>In re Vereen</u>, 219 B.R. 691, 694 (Bankr. D.S.C. 1997) (citing <u>In re Lyons</u>, 23 B.R. 123 (Bkrtcy.E.D.Va.1982)); <u>In re Howard</u>, 55 B.R. 580 (Bkrtcy.E.D.N.C.1985). Essentially, then, a § 727(d)(1) claim breaks down into two elements: (1) denial of discharge would have been appropriate pursuant to a § 727(a) claim; and (2) the debtor committed fraud in fact that prevented the movant from knowing until after the discharge had been entered. <u>See</u> <u>In re Meabon</u>, 508 B.R. 626, 630

(Bankr. W.D.N.C. 2014); In re Gallimore, No. 00-52225, 2004 WL 1743947, at *9 (Bankr. M.D.N.C. June 8, 2004).  Notably, many grounds for denial of discharge under § 727(a) include fraudulent actions themselves, such as §727(a)(4), but some do not, including § 727(a)(5). Claims such as those under § 727(a)(2), which do have a fraudulent element, can only form the basis of a revocation for discharge claim where the fraud involved was not just fraud against a creditor but fraud that allowed the debtor to obtain the discharge, as well.  A determination of fraudulent intent "depends largely upon an assessment of the credibility and demeanor of the debtor."  In re French, 499 F.3d at 353 (reversing a bankruptcy court determination on summary judgment and finding it inappropriate that "the court made known that it simply disbelieved" supportive affidavits).

The Complaint refers to two separate fraudulent acts that the Defendant allegedly committed, which would have warranted denial of her discharge under 11 U.S.C. § 727(a).  The first, the falsification of credit card statements in order to make personal purchases, is an alleged fraud only on the Hospital (the "Fraud on the Hospital"), performed pre-petition.  The second alleged fraud is that the Defendant knowingly and fraudulently concealed information in her statements, petition, and schedules, actions which allowed the defendant to procure a discharge (the "Petition and Statements Fraud").  The Complaint argues that the Fraud on the Hospital and Petition and Statements Fraud alleged would have been sufficient, if known prior to discharge, to bring claims under §§ 727(a)(4) or (5).  In the BA's Response to Summary Judgment, the BA also added that the Petition and Statements Fraud would have been sufficient, if known prior to discharge, to bring a claim under § 727(a)(2)(A).

The Defendant argues that the Plaintiff cannot produce admissible evidence to support a number of facts which form the basis of the BA's § 727(d)(1) claim.  First, the Defendant argues

the Plaintiff cannot show, and in fact admits he has no evidence, that the Defendant removed items from the Hospital's gift shop for personal use without authorization.  Next, the Defendant argues the Plaintiff has no evidence that the Defendant made any conveyances to third parties or that she was in possession of any property that should have been disclosed in the Defendant's schedules or petition.  Finally, the Defendant argues the Plaintiff does not point to any code section requiring criminal proceedings to be stated in a petition or schedules.

### (1) The Claim Under § 727(a)(4)

Section 727(a)(4) provides the court shall grant the debtor a discharge, unless the debtor "knowingly and fraudulently, in connection with the case, (A) made a false oath or account."  The purpose of § 727(a)(4) is to ensure that the creditors, the BA, and the trustee in a case have reliable information regarding the debtor's financial condition and the situation from which the bankruptcy filing precipitated.  In re Johnson, 82 B.R. 801, 805 (Bankr. E.D.N.C. 1988).  A statement or omission, known to be false, in a petition, schedule or statement, constitutes a false oath for the purpose of §727(a)(4).  In re Hooper, 274 B.R. 210, 218 (Bankr. D. S.C. 2001).

To prevent the granting of a discharge under§ 727(a)(4), the requesting party must prove that the debtor made a statement under oath which she knew to be false, that the statement was material, and she made the statement willfully, with the intent to defraud.  See In re French, 499 F.3d at 352.  Whether a debtor made a false oath is generally a question of fact.  See id.  Whether the oath was material is also a question of fact.  See Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir. 1987) ("The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of

his property.") (quoting In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam)); In re Sears, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) ("The existence of a relationship between the subject matter of an omission or misrepresentation and the concerns of the bankruptcy process rests on connections in fact.").

The Plaintiff argues in the Complaint that the Defendant made the following false oaths or accounts in her petition, schedules, and statements: she failed to disclose the existence of the criminal charges resulting from Fraud on the Hospital [Complaint, at ¶ 10]; she failed to disclose any gifts or transfers given or made during the Fraud on the Hospital [Complaint, at ¶ 11]; she failed to report over $1,000,000 worth of personal property obtained through Fraud on the Hospital since 2008 [Complaint, at ¶ 16]; and she testified under oath at her Section 341 meeting that her petition, schedules, and statements were complete, true, and accurate [Complaint, at ¶ 18]. In response to the Motion for Summary Judgment, the Plaintiff adds that the Defendant listed a claim for the Hospital in the amount of $35.00 for medical services, but did not list any claim related to the fraud [BA's Response, at p.3]; did not list any income from Thirty-One,[2] id.; and did not list the State or Forsyth County as parties for notice or as claimants, id. at 4.

---

[2] The Defendant objects to the Plaintiff arguing additional misstatements or omissions discussed in the Plaintiff's Response but not specifically cited in the Complaint. [See BA's Response, at p.3; Reply, at p.5]. The additional misrepresentations are not separate grounds upon which relief may be granted. Rather, they constitute additional evidence to support the claim for fraud in the case that was well pled in the Complaint. In a fraud claim, not every misrepresentation or detail needs to be alleged, as long as the core of the claim satisfies Fed. R. Civ. P. 9(b). Commercial Prop. Invs., Inc. v. Quality Inss Int'l, Inc., 61 F.3d 639, 646 n.6 (8th Cir. 1995). The core claim of transferring and concealing property from the Hospital and failing to list any of the property purchased, transferred, or any of the associated criminal charges was pled, and therefore, the Defendant had sufficient notice that these misrepresentations or omissions may be used to support the claim. The Complaint's reference and discussion of the RGL Report, which the Defendant acknowledged "appears to be the primary, or sole, basis of the allegations in the Plaintiff's Complaint," [Motion for Summary Judgment, at p.5 fn.2] provides notice that the alleged actions in the Report would be the basis for requesting the discharge be revoked. The RGL Report discusses in detail the purchase of more than $130,000 in merchandise from Thirty-One as being part of the unauthorized purchases which formed the basis of a claim for Fraud on the Hospital. In fact, the Defendant discusses the circumstances surrounding the purchase of $130,000 worth of items from Thirty-One, for which the Defendant acknowledged she received a commission. [See Defendant's Motion, at p.3 & 6].

The Defendant argues through her Motion and Affidavit that either the alleged fraudulent misstatements in her petition were not inaccurate or not required. Each alleged omission or misstatement is discussed below in turn.

Criminal Charges

No section or question on the Official Form 7 bankruptcy petition in use at the time of the Defendant's filing specifically requested her to list pending criminal proceedings. The statement of financial affairs asked the debtor to list only "suits and administrative proceedings, executions, garnishments and attachments."[3] The Defendant was also not specifically asked in the petition or schedules any question relating to pending criminal proceedings. However, courts have found the failure to disclose a pending criminal proceeding or any resulting claimants, debts, or obligations, can constitute a false oath if the omission is, in fact, material. See In re Holmes, No. ADV 11-80053-HB, 2012 WL 3292963, at *4 (Bankr. D.S.C. Aug. 10, 2012).

In Holmes, a debtor filed for bankruptcy and failed to list on his schedules information concerning a guilty plea entered eight months earlier as a result of a criminal conspiracy action. Id. at *2. The debtor testified that he failed to list or discuss his guilty plea–or the likely restitution that would be required as a result of the plea–because he believed restitution merely constituted a part of the criminal case and any debt imposed would be repaid separately. Id. Because the criminal matter precipitated the debtor's bankruptcy, the Court found that it was the most significant fact concerning his financial situation. Id. at *4. Therefore, the Court found the omission to be a false oath.

In contrast to Holmes, the Defendant argues this case is more similar to In re Leverett, 486 B.R. 391, 396 (Bankr. W.D. Tex. 2013). In Leverett, the court did not make a determination

---

[3] The current official Form 107 Statement of Financial Affairs asks specifically for all "court actions" currently pending. This form was not in use at the time of the Defendant's filings.

as to whether a pending criminal proceeding needed to be listed in the debtors' statement of financial affairs. The matter was only brought to the Court's attention on a request for revocation of the confirmation order; the Court found that the knowledge of the criminal case would not have changed the outcome of plan confirmation.

The Plaintiff argued at the Hearing that, regardless of the requirements under the Code and specifically stated in the schedules, the criminal proceeding resulting from Fraud on the Hospital is in fact the most important information in understanding this Defendant's financial condition at the time of bankruptcy. The Defendant argues that the Code does not require disclosure of criminal proceedings and that the restitution required in her case did not appear to impact the bankruptcy, so the discharge should not be revoked after she made a "good faith" decision not to disclose it. [Reply, at p.8].

The parties, therefore, dispute whether the criminal charges resulting from Fraud on the Hospital bear a relationship to the Defendant's business transactions or estate, or that the disclosure of the criminal charges could have led to the discovery of assets, business dealings, or the existence and disposition of the Defendant's property. Because there is a genuine dispute that the criminal charges impacted the Defendant's bankruptcy, a determination of materiality is appropriate at trial, not at summary judgment.

The Court also cannot determine whether the Defendant omitted the charges with fraudulent intent on the evidence presented for summary judgment. See In re French, 499 F.3d at 353. The Defendant claims she did discuss with her attorney the pending criminal charges, and therefore, she could not have intended to fraudulently omit the pending proceeding. [See Reply, at p.7-8] ("As Mr. Schollander, the Debtor's bankruptcy counsel, represented to the Court in the hearing on National Union's motion to reopen the case . . . when he and the Debtor were

14

preparing the Debtor's bankruptcy petition and schedules, he and the Debtor were aware of the criminal charges but did not include any potential claim for misappropriation in the Debtor's schedules because they had no inkling that the hospital or its assignee was contemplating a civil action against her.").

Because the parties do not dispute the Defendant did not disclose the criminal charges pending against her, but there is a genuine dispute concerning the materiality of those criminal charges to the Defendant's bankruptcy estate and financial condition, the Plaintiff's § 727(a)(4) should proceed to trial based on an omission of the criminal charges in the Defendant's petition, schedules, and statements.

Failure to List Gifts, Transfers, or Personal Property on Schedules

Next, the Plaintiff argues the Defendant's failure to disclose any gifts or transfers made during the Fraud on the Hospital and her failure to report over $1,000,000 worth of personal property obtained through Fraud on the Hospital since 2008 are material omissions and constitute a violation of § 727(a)(4). The Defendant argues the Plaintiff has no evidence that the Defendant made any conveyances to third parties or that she was in possession of any property that should have been disclosed in the Defendant's schedules or petition. Despite the Defendant's protest, there is no genuine issue of dispute that the Defendant did convey or retain certain items purchased using the Hospital's credit card or vendor account [Washabaugh Affidavit, at ¶ 6 & 9].

There is a dispute, however, as to whether any items conveyed or retained were material to the Defendant's bankruptcy estate or financial condition. The Plaintiff suggests the Defendant had ownership over these items, while the Defendant argues any property purchased or conveyed belonged to the Hospital and would be irrelevant to the Defendant's bankruptcy. The

Defendant's statements concerning her purchasing behavior of personal items support the Plaintiff's claim and suggest she had ownership over certain items purchased with the Hospital's credit card and through the vendor account. The Defendant's Answers to Plaintiff's Interrogatories state that the "Debtor . . . did purchase items for personal and work use from vendors, but it was noted on the invoice and paid for when received in the Gift Shop. All merchandise that Debtor purchased in the gift shop was calculated and paid to the Gift Shop Manager directly." [Doc. # 43-3, at ¶ 6]. The Defendant also admits she "had purchased certain items for [her]self or a family member and had not reimbursed [her] employer for them." [Washabaugh Affidavit, at ¶ 9]. Her affidavit suggests a habit of using the Hospital's credit card to purchase property and then paying for the property. With the Defendant's explanation, it would appear that some items purchased by the Defendant were intended for personal use, and that the Hospital would approve of those purchases with the intent that the Defendant would repay them. [See Hospital's Response to RGL investigation questions, Doc. # 43-4, ¶ 4 (Mark Bachmeier, Vice President of Hospitality & Support Services, was Washabaugh's supervisor and authorized her expenses)]. Thus, the Defendant may have had ownership of some of the property.

The parties dispute the amount of the property retained or conveyed. The Complaint alleges the Defendant "removed $56,931.00 worth of merchandise from the [Hospital] gift shop that she did not return." [Complaint, ¶ 15(c)]. As evidence for this allegation, the Plaintiff submitted the Affidavit of Carolyn Barnette, attorney in the Hospital's Risk Management Department, which states that a number of items purchased allegedly for resale through the Hospital gift shop by the Defendant were never sold there. [Affidavit of Carolyn Barnette, Doc. # 61-1]. The Barnette Affidavit cites to other indicia that the Defendant was making personal

purchases, including sales tax being paid where it normally would not for items on sale in the gift shop and purchases made at times and places when there is no market at which gift shop purchases would normally be made.  Id.  In the Defendant's response to Plaintiff's interrogatory asking for the identity of all merchandise removed from the Hospital gift shop with payment for personal or family use from 2012 to 2014 [Doc. # 43-3] (the "Defendant's Interrogatory Responses"), the Defendant states any such purchases were reimbursed upon receipt, that the purchases were noted on the gift shop invoice, and that merchandise the Defendant purchased through the gift shop was paid to the gift shop manager directly.  Id. ¶ 7.  The Defendant does not provide an account for the amount of purchases she made through the gift shop, but she specifically disputes removing $56,931.00 worth of merchandise from the gift shop. [4]

Viewing the facts in light most favorable to the Plaintiff, if the Defendant did reimburse her employer for items purchased through the gift shop, the affidavits supporting the RGL Report and the analysis of the Defendant's credit card statements evidence that the Defendant made thousands of dollars in purchases of high-end jewelry, designer clothing, and purses, which she did not report on her petition or schedules.  [See Affidavit of Yates Lacky, RGL Report at p.13, 15].  Thus, the Defendant's assertion on summary judgment that she did not remove merchandise from the gift shop without paying for it does not defeat a claim under § 727(a)(4) if

---

[4] There is some confusion whether the Complaint alleges the Defendant removed items from the gift shop shelves or whether the Defendant purchased items which were reported to be inventory in the gift shop but were retained by the Plaintiff or shipped to another person.  To the extent the Plaintiff is alleging the Defendant removed items from the shelves, there is no evidence to support that claim, and the Defendant's affidavit is the only evidence against such a claim.  To the extent the Plaintiff contends the $56,931.00 represents an amount of items purchased reportedly for the gift shop but instead retained for personal use, whether paid for or not paid for, the Plaintiff has submitted sufficient evidence such that a reasonable person could find the Defendant "removed" items from the gift shop by purchasing them and transferring while placing the Hospital under the impression they were for sale at the gift shop.  [See Doc. # 63-3; Doc. # 63-5 and Barnette Affidavit].

she had ownership in that property and the property, or transfer of that property, was not reported on her schedules.[5]

Although the Plaintiff does not specifically identify property taken that still remained in the Defendant's possession at the time she filed her petition, the Defendant's own admissions make this Court hesitant to prevent the Plaintiff from putting forth evidence at trial that the Defendant retained property at the time of the petition as a result of the Fraud on the Hospital which was required to be disclosed in her petition and schedules. As the Plaintiff has sufficient evidence by way of affidavits and the RGL Report analysis of the Defendant's credit card summaries to show the Defendant may have been concealing specific, identifiable purchases made on the Hospital's credit card, there is a genuine issue that a false oath was made under § 727(a)(4) when the Defendant failed to list any of that property in her schedules.

Scheduling the Hospital's Claim

Next, the Plaintiff argues the Defendant's Hospital claim for $35.00 in medical services (without mention of a possible claim for fraud) in her petition is a false oath or account. Although the Defendant provided the Hospital notice of her bankruptcy and listed the Hospital as a creditor, there is no question she failed to include any unsecured claim the Hospital would have had for the Fraud on the Hospital.

The nondisclosure of liabilities or creditors is as important as a nondisclosure of assets. See In re Khalil, 379 B.R. 163, 58 (B.A.P. 9th Cir. 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009). The Defendant disputes that she was required to disclose any claim the Hospital might have had

---

[5] It is possible the Defendant did own the property, in which case it would have been property of the estate. It is also possible the Defendant transferred property that was not property of the estate but that could have been used to reduce or satisfy the Hospital's claim for fraud and to satisfy the restitution requirements. See, e.g., In re Winkle, 128 B.R. 529, 535 (Bankr. S.D. Ohio 1991) ("disposition of the real estate and the Lincoln and Chrysler in April and September was not a transfer of the debtor's property"); Begier v. I.R.S., 496 U.S. 53, 59, 110 S. Ct. 2258, 2263, 110 L. Ed. 2d 46 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").

for the Fraud on the Hospital for the same reasons that she did not feel it necessary to disclose the criminal matters – she had no inkling such a claim would be filed.  This argument is meritless, as the petition and schedules require a debtor to list liabilities for unsecured debts, even though disputed, unliquidated, and contingent.  Though it is highly unlikely the Hospital's unsecured claim for the Fraud on the Hospital would not be a material matter on the petition, the Court would need to make findings of fact based on conflicting affidavits and infer the Defendant's knowledge of the claim status in order to determine materiality.  Therefore, findings concerning the materiality of the omission of the Hospital's claim and any accompanying fraudulent intent required to state a claim under § 727(a)(4) are best determined at trial.

<u>Income from Thirty-One</u>

Next, the Plaintiff argues the Defendant does not list income received from Thirty-One on her schedules and is hiding income through a false oath or omission.  Under Section 1 of her Statement of Financial Affairs, she reports a total income of $81,000 in 2013 and a total income of $45,000 in 2012.  [Case # 14-50105, Doc. # 1, at p.30].  The Defendant's tax returns for years 2012 and 2013, filed at some time during her bankruptcy case, show the Defendant earned $44,521 in income from the Hospital and gained $3,562 in income from Thirty-One in 2013, and earned $86,177 in income from the Hospital and lost $6,762 from her work with Thirty-One in 2012.  [BA's Response, Exhibit 4; Doc. # 1-4].  The BA has not argued that the tax returns are incorrect.

The BA argues that "the Defendant does not list any income from her commissioned work for 'Thirty-One' . . . during the two years prior to filing."  [BA's Response, at p. 3]. Although the Defendant does not break down the source of income as being from "Thirty-One"

and the "Hospital," for each year, the amounts listed in the schedules and petitions reflect income as reported on the Defendant's tax returns for 2012 and a realistic estimation for 2013. Therefore, the Plaintiff cannot show that the Defendant did not list income from 2012 and 2013.

Failure to List Claimants

Finally, the Defendant did not list the State or Forsyth County as parties for notice or as claimants.[6] There is no question the failure to include the State or Forsyth County as parties is a false oath or omission. The remaining question is whether this false oath or omission was made by mistake, innocent belief there would be no claim, or with fraudulent intent sufficient to support a claim under § 727(a)(4).

In conclusion, the Plaintiff has submitted enough evidence at summary judgment to pursue a claim under § 727(a)(4), having shown the Defendant failed to provide in her petition, schedules: (1) criminal charges that were pending at the time of the petition; (2) personal property obtained through Fraud on the Hospital that was either owned by the Defendant or transferred to her daughter; (3) the Hospital's disputed, unsecured claim other than for medical expenses; and (4) notification to the State or Forsyth County as parties. The Plaintiff has brought forth enough evidence to demonstrate there are genuine disputes as to whether any of these four misrepresentations are material, and whether the Defendant made these false oaths with fraudulent intent.

### (2) The Claim under § 727(a)(5)

Section 727(a)(5) denies a discharge when the "debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." Generally, the Plaintiff must produce more than an allegation that the debtor cannot explain asset loses but must

---

[6] She does list Forsyth County Tax Collector and the N.C. Dept. of Revenue for notice purposes.

also produce evidence of a disappearance of substantial assets or transactions which concealed assets in order to state a claim under § 727(a)(5).  In re Park, 272 B.R. 323, 322 (Bankr. D. N.J. 2001) (on a motion for default judgment, the Plaintiff failed to provide any factual foundation for the allegation that the debtor owned the assets at one time but that those assets were no longer available for distribution).  Unlike a claim under § 727(a)(4), § 727(a)(5) requires no fraudulent intent.  Therefore, in order to state a claim for revocation of discharge under § 727(d)(1) based on an alleged violation of § 727(a)(5), the Plaintiff must also show the Defendant committed fraud in fact which kept the Plaintiff from knowing of a possible § 727(a)(5) claim prior to discharge.

The Complaint states that the Defendant failed, in her petition or at the 341 Creditor's Meeting, to satisfactorily explain any loss of assets or inability to meet liabilities, given the discovery of alleged fraudulent acquisitions or transfers of over $1,000,000 worth of personal property in the five years prior to bankruptcy.  The Complaint points to the fact that the petition, schedules, and statements made by the Debtor do not reflect the acquisition of this amount of personal property.  Again, the Defendant disputes that she acquired any personal property other than the property totaling $3,153.86, given to her daughter for which she paid restitution.  The Defendant asserts that the over $1,000,000 allegedly fraudulent purchases were for volunteers or employees and that those purchases were approved by Mark Bachmeier, the Vice President to whom the Defendant reported.  The Plaintiff argues, however, that the Defendant purchased thousands of dollars of personal property, and that the evidence shows that property never went to the volunteers or employees but instead was transferred to the Defendant's daughter or remains with the Defendant.

The evidence which supports a claim under § 727(a)(5) includes the credit card statement summaries submitted by the Defendant to the Hospital from 2012 and 2013 which indicate she made purchases for employees when in fact the team who investigated and wrote the RGL Report, and submitted affidavits, found the purchases went directly to the Defendant or to her daughter.  [RGL Report, Doc. # 63-2, at p. 13-18; Affidavit of Carolyn Barnette; Affidavit of Yates Lackey; Certification of Linda Hogarth].  According to both affidavits submitted by proposed witnesses for trial as well as the RGL Report, which can be substantiated by those witnesses who prepared the Report, the Defendant was unable during the investigation and two interviews conducted with Hospital employees to explain the purchases of items found in her office, was evasive in general, and stated the items were for volunteers when a reasonable person could determine those items were not.  [Affidavit of Yates Lackey; RGL Report, at p. 13, 15].

A reasonable person could find the Defendant failed to explain satisfactorily the loss of assets or deficiency of assets to meet liabilities she was incurring with the Hospital as a result of the Fraud on the Hospital.  The dispute regarding whether the Defendant adequately explained the alleged personal purchases and to whom those purchases were given is a question of fact to be determined after assessing the credibility of witnesses who provided affidavits.  Thus, the Plaintiff has evidence sufficient to make out a claim under §727(a)(5).

### (3) A Claim Under § 727(a)(2) Is Not Properly Before the Court

The claim argued in Plaintiff's Response under § 727(a)(2)[7] is not properly before the Court as it was not well pled in the Complaint, and the Plaintiff did not file a motion to amend

---

[7] Section 727(a)(2)(A) provides the court "shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed . . .  property of the debtor, within one year before the date of the filing of the petition . . . ."

the pleadings.  As the Defendant correctly states, it is improper to add a claim or argument supporting a claim in a response to a motion for summary judgment that is not evident in the complaint.  See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (finding it inappropriate to add a contract claim for breach in a response to summary judgment where only tort claims, including tortious interference with a contract, had been pled); Robinson v. Bowser, No. 1:12CV301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013) ("the Court will not allow Plaintiff to raise a new argument at the summary judgment stage, the basis of which was not evident from the Complaint").  However, where the complaint articulates a theory supporting a claim and the defendant has sufficient notice of that theory, the theory is properly before the court.  See Stevenson v. City of Seat Pleasant Md., 743 F.3d 411, 418 (4th Cir. 2014) (determining that the plain language of the complaint sufficiently stated the legal theory of a claim for bystander liability even though the words "bystander liability" did not appear in the complaint); Phillips v. Raytheon Applied Signal Technology, Inc., 2013 WL 5440802, at * 14 (D. Md. 2013) (distinguishing Barclay v. Battelle and considering the plaintiff's gender discrimination claim under Title VII because, although not expressly stating the claim was a gender discrimination claim, the plaintiff clearly alleged discrimination violated Title VII and FMLA even though she only stated her termination constituted improper retaliation; her assertions in response to the defendant's summary judgment motions were not new claims but new assertions that support her claim of discrimination).

In this case, although the claims asserted under §727(a)(2) and §727(a)(4) are factually intertwined, § 727(a)(2) was not clearly pled in the Complaint.  See Green Country Food Market, Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1279 (10th Cir. 2004) (holding an incorrect statutory citation is not an unimportant detail that could be corrected by the facts set out in the

complaint but fundamental to the structure of the complaint, especially where the citation represents the legal theory). The Complaint alleges the Defendant "obtained her discharge by fraud, through the commission and concealment of the events set forth above, Complaint, ¶ 19, which includes "using her [Hospital] credit card for personal purchase . . . for her daughter and others," Id. ¶ 3, which purchases she then "concealed . . . from [Hospital] by submitting falsified credit card summary statements to [the Hospital] which indicated that the purchases were for business purposes," Id. ¶ 4, and that, in addition, "she made unauthorized personal purchases from multiple vendors through [the Hospital's] vendor account," Id. ¶ 6, and "removed inventory from [the Hospital's] gift shop," Id. ¶ 7. There are no clear allegations these were transfers of property of the debtor, which is a critical element of a claim under § 727(a)(2).[8] Most importantly, the Plaintiff fails to cite to § 727(a)(2) in the request for relief.

Allowing for a liberal interpretation of the complaint, a court should not prevent a plaintiff from pursuing a claim simply because the complaint fails to set out a theory upon which the plaintiff could recover, provided there is no prejudice to the other party. Green Country Food Market, Inc., 371 F.3d at 1279. Yet, simply stating all the facts necessary to state a claim does not mean that a Defendant should have to infer all possible claims that will be prosecuted for the purposes of trial. See Gilmour, 382 F.3d at 1315. The detail left out of this complaint is the specific statutory citation, which is not an "unimportant detail implicitly corrected by the facts alleged" in the Complaint. In re Santa Fe Downs, Inc., 611 F.2d 815, 816 (10th Cir. 1980)

---

[8] The purpose of section 727(a)(2) is to deny a discharge to a debtor who intends to avoid paying creditors by concealing or disposing of assets that would have become part of the estate. See In re Sieber, 489 B.R. 531 (Bankr. D. Md. 2013); In re Poffenberger, 471 B.R. 807 (Bankr. D. Md. 2012) (quoting Butler v. Ingle (In re Ingle), 70 B.R. 979, 983 (Bankr.E.D.N.C.1987)). A claim under section 727(a)(2) requires that the property transferred or concealed be property in which the debtor has a "direct proprietary interest" if the transfer or concealment took place in the year prior to the filing of the petition. In re Wagner, 305 B.R. 472, 475 (B.A.P. 8th Cir. 2004).

(finding the trustee's complaint stating an action pursuant to §67(a)(1) of the Bankruptcy Act could not be the basis of recovery on a § 60 act where there was an element the two did not share in common and the trustee did not make an attempt to amend the pleadings at any time).

The Plaintiff failed to move to amend the Complaint under Rule 15 of the Federal Rules of Civil Procedure.  Lack of prejudice to an opposing party does not provide a basis for the Court to sua sponte allow for an implied amendment of a complaint.  Green Country Food Market, 371 F.3d at 1281; Santa Fe Downs, Inc., 611 at 817.[9]   Because the Defendant raised objections to the claim under § 727(a)(2), the Court will not consider the Plaintiff's ability to move forward under § 727(a)(2) on this Motion for Summary Judgment.

## CONCLUSION

For the reasons as set forth above, the Defendant's Motion is denied.  A separate judgment will be entered contemporaneously with this Memorandum Opinion pursuant to Rule 9021.

## [END OF DOCUMENT]

---

[9] Any prejudice in the Plaintiff amending the Complaint and include the § 727(a)(2) claim would have be minimal or non-existent.  Defendant's Summary Judgment Motion acknowledges that a claim under §727(d)(1) may be established by proof of conduct by a debtor in violation of § 727(a), and "[s]uch conduct would include transfer or concealment of property with intent to hinder, delay, or defraud a creditor . . . ."  [Defendant's Motion, at p.8].  The Defendant's summary of undisputed facts spans all time periods and events relevant to Plaintiff's claim that the Defendant made personal purchases for herself and her daughter and details that many of those items were sent directly to her daughter.  [Defendant's Motion, at p.4].  Defendant's Interrogatories do ask the Plaintiff to provide facts relating to every element of the §727(a)(2) claim, including: the identification of any items purchased for the Defendant's daughter and every extravagant gift (the transfers); the date of submission and contents of all false information submitted to the Hospital regarding the personal purchases (the concealment); any failure on the part of the Defendant to get approval for the purchases (evidence for intent to commit the fraud); any indication or facts giving rise to a theory that the Defendant owned the items at the time of conveyance or at the time of filing the petition (the ownership element).  [See Defendant's Interrogatories, Doc. # 43-10].